IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK CHAMBERLAIN, :<br>    Plaintiff, :<br>            :<br>v. :<br>            :<br>THE CITY OF PHILADELPHIA, *et al.*, :<br>    Defendants. : | CIVIL ACTION NO. 23-CV-1424 |

## MEMORANDUM

**SCHMEHL, J. /s/ JLS**                                                               **AUGUST 17, 2023**

*Pro se* Plaintiff Mark Chamberlain filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that the conditions in which he was held in the Philadelphia Prison System violated his constitutional rights.[1] Chamberlain also seeks leave to proceed *in forma pauperis*.[2] For the following reasons, the Court will grant Chamberlain leave to proceed *in forma pauperis*

---

[1] Chamberlain's claims in this case were originally raised in a separate case, *Chamberlain v. City of Philadelphia*, No. 20-6572, 2023 WL 2868010, at *5 (E.D. Pa. Apr. 10, 2023) ("Case No. 20-6572"). In Case No. 20-6572, which is still pending, the Court concluded that any of Chamberlain's claims related to the conditions of his confinement in the Philadelphia prison system must be severed from the claims he raised in that action. The Court now addresses the severed claims in this case, Case No. 23-1423.

[2] Because Chamberlain was incarcerated at the time he filed the original Complaint in Case No. 20-6572, which resulted in the severance of his claims and the initiation of this matter, the Prison Litigation Reform Act ("PLRA") applies, even though Chamberlain has since been released from imprisonment. *See, e.g., In re Smith*, 114 F.3d 1247, 1251 (D.C. Cir. 1997) ("If a litigant is a prisoner on the day he files a civil action, the PLRA applies."). Thus, Chamberlain was required to pay an initial partial filing fee, which was calculated based upon the financial information in the six-month account statement that he provided to the Court. *See Drayer v. Att'y Gen. of Del.*, 81 F. App'x 429, 431 (3d Cir. 2003) (*per curiam*). To avoid paying the remainder of the filing fee, Chamberlain was advised that he could file a new motion to proceed *in forma pauperis* in which he informs the Court how he supports himself after his release from incarceration. (*See* ECF Nos. 7, 9.) Chamberlain paid the partial filing fee (*see* ECF No. 8) and submitted a new motion to proceed *in forma pauperis* (*see* ECF No. 10).

and dismiss his Complaint. Chamberlain will be given an opportunity to file an amended complaint.

I.     FACTUAL ALLEGATIONS

The Complaint names the following Defendants: (1) the City of Philadelphia; (2) Mayor Jim Kenney; (3) Commissioner Blanche Carney; and (4) the Philadelphia Prison System. (Compl. at 2.)[3] The Defendants are sued in their individual and official capacities, except for Mayor Kenney, who is sued only in his official capacity. (Compl. at 3-8.)

Chamberlain alleges that the conditions in which he was held within the Philadelphia Prison System during his pretrial detention violated his constitutional rights. Chamberlain had already been incarcerated for 11 months at the Curran Fromhold Correctional Facility ("CFCF") before his transfer to the Philadelphia Detention Center in March of 2020. (*Id*. at 32.) He describes the Detention Center as "condemned, nasty, [and] unsanitary" and infested with roaches and rats. (*Id*.) The remainder of Chamberlain's allegations center on the prisons' policies and measures implemented in response to the COVID-19 pandemic. Chamberlain alleges that in response to COVID-19, inmates were locked in their cells "for days at a time" and not permitted to go to court or use the law library, staff failed to take COVID-19 tests, inmates were required to use sheets for masks and pay for family visits by video after in-person visits were discontinued, and violent offenders were released "in an attempt to stop the spread" of the virus where nonviolent offenders like Chamberlain were not released. (*Id*. at 31, 34.) Chamberlain also complains that despite the City of Philadelphia shutting down and despite the "thousands of people" who already became infected with or died from COVID-19, the staff and inmates at the Detention Center were not "mandated to wear P.P.E. gear and did not begin

---

[3] The Court adopts the pagination supplied by the CM/ECF docketing system.

wearing any or making any available for inmates or staff" until approximately April-May, 2020. (*Id*. at 32.)

In mid-March 2020, Chamberlain began to suffer from allergy or flu-like symptoms, for which he sought and received medical treatment. (*Id*.) Although at some point Chamberlain tested positive for COVID-19 (*see id*. at 33), it is not clear from the Complaint whether the COVID-19 diagnosis relates to the allergy or flu like symptoms he suffered in mid-March. Chamberlain alleges that the medical staff who performed COVID-19 testing on him were negligent because they failed to practice social distancing when testing and failed to change their gloves in between the testing of inmates. (*Id*. at 34.) On May 30, 2020, Chamberlain was moved to the top tier of his block "where the other infected inmates were already being quarantined." (*Id*. at 32.)

Chamberlain describes the Detention Center's policy of placing quarantining COVID-19-infected inmates on the same block as uninfected inmates as "pure advertent negligence." (*Id*. at 33.) He also alleges that prison officials' decision to place industrial "high powered" fans on the block that housed both uninfected and COVID-19-infected inmates was "clear advertent negligence at its best." (*Id*.) When Chamberlain complained about these quarantining policies, he was told that the decision came "from higher up, meaning Commissioner [] Carney, who in turn was following orders from Mayor Jim Kenney." (*Id*.) Chamberlain also alleges that the prison responded to all of his grievances, "whether to medical, staff, or appeals," by stating that "the Philadelphia prison system has followed all protocol and policy of the City of Philadelphia." (*Id*.) Chamberlain states, however, that the Philadelphia Prison System's "protocol and policies are broken" and are "not effective" for addressing "crises such as COVID-19" and that prison staff "has never been properly trained for an airborne disease outbreak." (*Id*. at 33-34.)

Chamberlain also alleges that "during the shutdown" due to COVID-19, he was "denied access to the courts" because Commissioner Carney decided to shut down the prison law libraries. (*Id*.) Chamberlain wrote "several grievances" about his access to the law library. In one grievance response, Commissioner Carney responded "'you have received access to the law library according to the book for two days in August.'" (*Id*. at 38.) Chamberlain alleges that he requires more than two hours a month of law library access "to show or demonstrate" how the prison is "illegally holding [him] captive." (*Id*.)

Based on these allegations, Chamberlain asserts claims under the Eighth and Fourteenth Amendments pursuant to § 1983. (*Id*. at 7.)[4] He alleges that he was "denied access to the courts" (Compl. at 37), subjected to "excessive use of quarantine," "placed in disciplinary situations [due to] COVID-19," not "given [a] healthy, safe environment for housing or sleeping," deprived "proper protective equipment" and "trained medical staff," and that the prison failed "to protect inmates from COVID-19" (*id*. at 7). He also alleges a *Monell* claim based on the "failure to train or put into place proper policies in order to protect the health and safety of inmates during regular times as well as during a pandemic/crisis." (*Id*. at 39.) As relief, Chamberlain seeks money damages. (*Id*. at 40-41.) He also seeks an injunction "to be sure no other citizen of the United States will be subjected to this type of unconstitutional treatment in the future," "to prevent the Phila[delphia] Prison System from violating Pro Se

---

[4] Because Chamberlain was a pretrial detainee in state custody during the events alleged in the Complaint, his claims are governed by the Fourteenth Amendment and not the Eighth Amendment. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005); *see also Dusenbery v. United States*, 534 U.S. 161, 167 (2002).

Defendants rights (such as denying law library and access to the court)," and to "safeguard the health and safety of inmates during a pandemic." (*Id*. at 42.)[5]

## II. STANDARD OF REVIEW

The Court grants Chamberlain leave to proceed *in forma pauperis* because it appears that he does not have the ability to pre-pay the fees to commence this case. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Chamberlain is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

---

[5] Chamberlain's claims for injunctive relief in connection with the conditions at the Philadelphia Prison System are now moot as Chamberlain is no longer in the custody of the Philadelphia Prison System. *See Robinson v. Cameron*, 814 F. App'x 724, 725 (3d Cir. 2020) (dismissing appeal as moot where suit sought only injunctive relief and inmate was no longer in custody); *Griffin v. Beard*, 401 F. App'x 715, 716 (3d Cir. 2010) (*per curiam*) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims.").

## III.   DISCUSSION

Chamberlain asserts constitutional claims against Defendants pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a §1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

### A.   Claims against the Philadelphia Prison System

Chamberlain names the Philadelphia Prison System as a Defendant.  City agencies are not suable entities under § 1983 because they do not have a separate legal existence from the City of Philadelphia.  *See Vurimindi v. City of Philadelphia*, No. 10-88, 2010 WL 3169610, at *1 (E.D. Pa. Aug. 10, 2010) (holding that under 53 Pa. Cons. Stat. § 16257, "no such department shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transaction . . . shall be in the name of the City of Philadelphia").  For this reason, the Third Circuit has held specifically that, "the Philadelphia Prison System, [a] department[ ] of the City of Philadelphia itself, [is] not [a] proper defendant[ ]" in an action brought under § 1983. *Russell v. City of Philadelphia*, 428 F. App'x 174, 177 (3d Cir. 2011) (citing § 16257). Accordingly, all claims against the Philadelphia Prison System are dismissed with prejudice.

6

### B. Claims against the City of Philadelphia and Official Capacity Claims

Chamberlain brings claims against the City of Philadelphia as well as official capacity claims against all Defendants. Official capacity claims are indistinguishable from claims against the entity that employs the officials. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (*quoting Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978))). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. Since Chamberlain's official capacity claims are essentially the same as his claims against the City of Philadelphia, the Court will analyze these claims together according to the standards for pleading a municipal liability claim.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). It is not enough, however, to allege the existence of a policy or a custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id*. (*citing Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done

"by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* (quoting *Bielevicz*, 915 F.2d at 850). Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a plausible claim. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*." (citing cases)).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

> As the United States Court of Appeals for the Third Circuit stated,
>
> If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely . . . result in the violation of constitutional rights" — i.e., to show that "the need for more or different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

*Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).

Chamberlain bases his *Monell* claim on Defendants' alleged "failure to train or put into place proper policies in order to protect the health and safety of inmates during regular times as

8

well as during a pandemic/crisis." (Compl. at 39.) Chamberlain's *Monell* claim fails as pled as his allegations are vague, generalized, and conclusory. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient to state a claim under *Monell*); *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 674 (E.D. Pa. 2017) ("These conclusory allegations, which merely parrot the standard of liability, are insufficient to state a claim for § 1983 liability under Monell"), *aff'd*, 756 F. App'x 165 (3d Cir. 2018). To the extent that Chamberlain bases his *Monell* claim on his assortment of complaints about the conditions at the Detention Center after measures were enacted to curb the spread of COVID-19 – such as "locking" inmates in cells, requiring the use of bed sheets for masks, discontinuing in person family visits, releasing violent offenders, limiting law library usage, and instituting protocols for testing and quarantining – such a claim also fails. Chamberlain has not alleged that any of these conditions were the result of a municipal custom or policy. Moreover, he has not alleged facts that tie any of these conditions to any alleged constitutional harm he suffered. In other words, he has not alleged the requisite affirmative link between a City of Philadelphia municipal policy or custom and the various alleged constitutional deprivations. The absence of specific allegations about causation is fatal to Chamberlain's municipal liability claim. *See Wood v. Williams*, 568 F. App'x 100, 105 (3d Cir. 2014).

Chamberlain's failure-to-train claims are similarly deficient. Chamberlain merely alleges in conclusory terms that prison staff were not properly trained in airborne diseases. Chamberlain has not identified where the training was deficient and how that deficiency amounts to deliberate indifference to his constitutional rights. *See Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) ("A plaintiff pressing a § 1983 claim must identify a failure to provide specific training

9

that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred."). Nor has he alleged with any particularity a pattern of similar constitutional violations that would have put Philadelphia on notice that new training was required. *See Torres v. Monmouth Cnty. Correctional Inst.*, No. 19-17704, 2021 WL 3773687, at *6 (D.N.J. Aug. 25, 2021) (dismissing failure-to-train claims where allegations were vague and the plaintiff did not provide "facts showing a pattern of prior incidents that would suggest a need for additional training"). Instead, Chamberlain makes generalized and conclusory allegations, which are insufficient to state a claim for failure to train. *See Wood*, 568 F. App'x at 104 (affirming district court's dismissal of complaint where it "failed to identify any unlawful policy or custom and failed to identify any policymaker or decisionmaker responsible for the unlawful conduct alleged" and instead "made conclusory and general claims of failure to screen, train, or supervise employees to avoid constitutional violations"). Accordingly, Chamberlain's § 1983 claims against the City of Philadelphia and the official capacity claims will be dismissed.

### C. Claims against Commissioner Carney and Mayor Kenney[6]

Chamberlain names Commissioner Carney and Mayor Kenney as Defendants because, based on their high-level positions with the Philadelphia Prison System and the City of Philadelphia, they were generally responsible for the prison's response to COVID-19, including

---

[6] In drafting his Complaint, Chamberlain indicated that he seeks to name Mayor Kenney in his official capacity only, while Commissioner Carney was named in her individual and official capacity. Chamberlain appears not to have understood the implication of asserting claims against Mayor Kenney in only his official capacity. A noted above, claims against government employees such as Mayor Kenney named in their official capacity are indistinguishable from claims against the governmental entity that employs the Defendant. *See Graham*, 473 U.S. at 165-66. Liberally construing the Complaint, the Court understands Chamberlain to also assert claims against Mayor Kenney in his individual capacity.

setting protocols for quarantining and limiting law library usage. As explained above, a defendant is not liable for civil rights violations unless he or she was personally involved in the events giving rise to the violations. *See Rode*, 845 F.2d at 1207; *Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). By extension, generalized allegations that a defendant is "in charge of" or "responsible for" an office or facility are not sufficient to allege personal involvement in an underlying constitutional violation. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *see also Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id*. (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir.

11

2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id*.; *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). To the extent that Chamberlain's claims against Commissioner Carney and Mayor Kenney are predicated solely on their general responsibilities in overseeing operation of the Philadelphia Prison System, such claims are not plausible.

Moreover, to the extent that Chamberlain brings claims against Commissioner Carney or any Defendant based solely on their involvement in denying his grievances, such claims are also not viable. This is because participation in the grievance process does not, without more, establish involvement in the underlying constitutional violation. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants . . . who participated only in the denial of [the plaintiff]'s grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of [the plaintiff]'s prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews.").

Liberally construing the Complaint, the Court understands Chamberlain to assert claims for failure to protect against COVID-19 against Commissioner Carney and Mayor Kenney based on allegations that these supervisory defendants were involved in setting the protocols for

quarantining in response to COVID-19. (*See* Compl. at 33 (stating that when he complained to prison staff about the quarantine protocols, the staff's response was that it was "not [their] call" but rather that "it came from higher up . . . meaning Commissioner Carney [], who in turn was following orders from Mayor Jim Kenney.")) The Court also understands Chamberlain to assert an access to courts claim against Commissioner Carney based on allegations that she was responsible for limiting inmates' use of the law library in response to COVID-19. As set forth below, Chamberlain has failed to state plausible claims.

### 1.     Failure to Protect against COVID-19

Chamberlain appears to assert claims against Commissioner Carney and Mayor Kenney based on allegations that they were responsible for instituting quarantining protocols at the Philadelphia prisons. He specifically describes an alleged policy of placing quarantining COVID-19-infected inmates on the same block as uninfected inmates and placing industrial "high powered" fans on that block as "advertent negligence." (Compl. at 33.) The Court understands Chamberlain to allege a claim that Defendants failed to manage the spread of, and thus failed to protect him against exposure to, the COVID-19 virus.

To state a constitutional claim in the context of COVID-19 management, Chamberlain must allege facts to support a plausible inference that prison officials were deliberately indifferent to his serious medical needs. *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020). To meet this standard, the facts alleged must reflect that the "Government knew of and disregarded an excessive risk to [his] health and safety." *Id*. at 328-29 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)). "The context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and, in this context, a reviewing court must defer to the expertise of both medical officials and jail administrators,

and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic, as constitutional rules "are not subject to mechanical application in unfamiliar territory." *Id*. at 330 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)) (emphasis in original). Thus, where the facility has taken concrete steps towards mitigating the medical effects of COVID-19 in a detention facility, a prisoner will fall "well short" of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus, even though they cannot entirely "eliminate all risk" of contracting COVID. *Id*. at 330-31.

Chamberlain alleges that Defendants were negligent for establishing quarantining protocols that, according to him, increased as opposed to mitigated, the risk of spread of COVID-19. However, it is well-established that "[d]eliberate indifference requires significantly more than negligence," *Hope*, 972 F.3d at 329, and mere exposure to COVID-19 does constitute deliberate indifference. *Id*. at 330 ("Nor does a failure to eliminate all risk establish that the Government was deliberately indifferent to their serious medical needs."); *see also Williamson v. Viles*, No. 22-4581, 2023 WL 2424163, at *2 (D.N.J. Mar. 9, 2023) (dismissing claim based on allegations that the defendant failed to prevent the plaintiff's exposure to COVID-19). Moreover, as the allegations of the Complaint reflect, prison officials at the Philadelphia prisons were following all protocols and policies set by the City of Philadelphia in response to the COVID-19 outbreak. *See Hope*, 972 F.3d at 330. Chamberlain's allegations about Defendants' inadequate policies and protocols to address the spread of COVID-19 are otherwise vague and conclusory and do not raise a plausible inference that Defendants disregarded an excessive risk to Chamberlain's health or safety. *See id.* (explaining that the Constitution does not require the government to entirely eliminate risk of contracting COVID-19 in a correctional setting); *Muata*

14

*v. Hicks*, No. 21-3210, 2022 WL 2526692, at *1 (3d Cir. July 7, 2022) ("Even if plaintiffs could show that [the high-ranking prison official defendants] knew of the risk posed by COVID-19, despite its unprecedented and unpredictable nature, they have failed to allege that either defendant disregarded that risk when creating the prison's policies."). Accordingly, Chamberlain's claims based on Defendants' alleged inadequate quarantine policies and failure to manage the spread of COVID-19 are dismissed.

### 2. Access to Courts Claim

Chamberlain appears to also assert an access-to-courts claim based on allegations that he was denied reasonable access to the law library after Commissioner Carney "shut down" the library in response to COVID-19. The inability of pretrial detainees to access legal resources such as the law library is analyzed as an access-to-courts claim under the First and Fourteenth Amendments. *Prater v. City of Philadelphia*, 542 F. App'x 135, 137 (3d Cir. 2013) (*per curiam*); *see also Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) ("Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts."). To state a claim for denial of access to courts, a plaintiff must show that he "suffered 'an actual injury' because of his alleged inability to access the prison library." *Prater*, 542 F. App'x at 137 (quoting *Lewis v. Casey*, 518 U.S. 343, 349 (1996)). A detainee states an actual injury by alleging "that a 'nonfrivolous' and 'arguable' claim was lost because of the denial of access to the courts." *Tinsley v. Giorla*, 369 F. App'x 378, 381 (3d Cir. 2010); *see also Sanders v. Rose*, 576 F. App'x 91, 94 (3d Cir. 2014) ("[T]o sufficiently plead an access-to-courts claim . . . a non-prisoner must plead that 'official acts . . . may allegedly have caused the loss . . . of a meritorious case.'" (quoting *Christopher v. Harbury*, 536 U.S. 403, 416 (2002)).

Chamberlain does not provide sufficient facts about his alleged inability to access the law library, including when and how often he requested access, and the circumstances surrounding the denial of those requests, including who was involved in denying them. He merely states that two times a month is not sufficient for his library needs. Moreover, Chamberlain does not allege an actual injury that resulted from his inability to access the law library. He states only that his limited time in the law library prevented him from showing how the prison was "illegally holding [him] captive." (Compl. at 13.) He provides no further facts about what specific claim or defense was lost as a result of his limited law library access. Such vague and generalized allegations are not sufficient to state a plausible claim. *See Prater*, 542 F. App'x at 137 (affirming denial of access-to-courts claim where the pretrial detainee had "not offered any other explanation of how his inability to access the library affected his criminal proceedings"); *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of access-to-courts claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). Accordingly, Chamberlain's access to courts claim will be dismissed.

### 3. Claims Based on Unsanitary Conditions

The Court understands Chamberlain to also generally assert a claim based on the unsanitary conditions at the Philadelphia Detention Center. He describes the Detention Center as "condemned, nasty, unsanitary" and infested with roaches and rats. (Compl. at 32.) "Under the Due Process Clause [of the Fourteenth Amendment], a pretrial detainee 'may not be punished prior to an adjudication of guilt in accordance with due process of law.'" *Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) (*per curiam*) (quoting *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008)). To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell* v. Wolfish, 441 U.S. 520,

16

538 (1979); *see also Camps*, 843 F. App'x at 452 ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective."). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373. Only conditions of confinement that "cause inmates to endure such genuine privations and hardship over an extended period of time" violate the Fourteenth Amendment. *Hubbard*, 538 F.3d at 233 (internal quotations omitted).

Chamberlain's claims about the alleged unsanitary conditions at the Philadelphia Detention Center fail as pled because he has not tied any Defendant's specific conduct to the alleged constitutional violations. The claims also fail because they are vague and factually undeveloped. Chamberlain has not alleged any facts about the "nasty" or "condemned" conditions to which he was exposed, such as when and how he was exposed to them, and for how long. His allegations, without more, fail to raise an inference that the conditions were intended as punishment. *See DiMaio v. George W. Hill Intake Dep't*, 367 F. Supp. 3d 301, 306

17

(E.D. Pa. 2019) ("DiMaio has not established a plausible constitutional violation because he has not alleged that the overcrowded conditions amounted to punishment, deprived him of a basic need, or otherwise caused him harm."). Accordingly, all claims based on the unsanitary conditions at the Philadelphia Detention Center will be dismissed.

### D. Negligence Claims

Liberally construing the Complaint, the Court understands Chamberlain to assert state law negligence claims in connection with quarantining protocols during the COVID-19 outbreak. The only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[7] Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa*, LLC, 652 F.3d 340, 344 (3d Cir. 2011). A political subdivision of a state is a citizen of the state for purposes of determining diversity jurisdiction. *See Doolin v. Kasin*, 424 F. App'x 106, 109 (3d Cir. 2011) (citing *Moor v. Alameda County*, 411 U.S. 693, 717 (1973)). It appears that Chamberlain and at least some of the Defendants are

---

[7] Because the Court has dismissed Chamberlain's federal claims, it will not exercise supplemental jurisdiction over any state law claims.

citizens of Pennsylvania such that diversity jurisdiction does not exist over Chamberlain's state law claims. Accordingly, his negligence claims will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Chamberlain leave to proceed *in forma pauperis*, dismiss his federal claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, and dismiss any state law claims for lack of subject matter jurisdiction. Chamberlain's claims against the Philadelphia Prison System will be dismissed with prejudice because the defects in those claims cannot be cured. Chamberlain's claims against the remaining Defendants will be dismissed without prejudice to him filing an amended complaint in accordance with the Court's Order that accompanies this Memorandum.

An appropriate Order follows.

                                        **BY THE COURT:**

                                        **/s/ Jeffrey L. Schmehl**
                                        **JEFFREY L. SCHMEHL, J.**